UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel Irish, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED UNDER FRCP 38(b)** |
| Keith McNamara, in his individual capacity as a Hennepin County Sheriff's Deputy, | |
| Defendant. | |

For his Complaint, Plaintiff Daniel Irish ("Irish") hereby states and alleges as follows:

1. This is an action for money damages against Defendant Keith McNamara ("McNamara"), a Hennepin County Sheriff's Deputy, for constitutional harm Irish suffered when McNamara's Hennepin County K9, "Thor," seized and seriously injured Irish on March 22, 2022.

2. Irish was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

3. During the incident in question, Irish was on-duty as a Champlin Police Officer and attempting to help other peace officers apprehend a driver who had fled a traffic stop in Champlin, Minnesota.

93054113.1

4. Thor ultimately apprehended the driver, but not before he unreasonably seized Irish and thereby rendered McNamara liable for excessive force under the Fourth Amendment.

5. McNamara was, at all times material herein, a duly appointed and acting Deputy of the Hennepin County Sheriff's Office. He is sued in his individual capacity for misconduct occurring under color of state law.

6. Irish brings this action pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

7. State-law claims, and any limitations and defenses available under Minnesota law, including any workers' compensation exclusivity provisions, are not applicable to this civil-rights lawsuit. *See Daniels v. City of Minneapolis*, 923 N.W.2d 637, 652 (Minn. 2019).

8. The Fourth Amendment seizure of Irish occurred near the North Oaks Manor Apartments (the "Apartments") and St. Vincent Cemetery (the "Cemetery") in the City of Osseo, County of Hennepin, State of Minnesota.

9. The location and circumstances of the events are important, because any reasonable officer would have known that letting a K9 off-leash without

warning was objectively unreasonable and presented a danger to any number of innocent people.

10. The suspect fled at around 2:30 p.m. on Tuesday, March 22, 2022.

11. He fled by vehicle from Champlin to Osseo. Champlin Police Officer Andy Jaye reported that the suspect lost control of his vehicle next to the Cemetery in Osseo.

12. The west side of Highway 169 where the Cemetery is located includes the adjacent Apartments and Osseo Education Center (the "School"):



13. The School is for young adults aged 17-21 who receive special-education services ranging from academics to independent living skills.

93054113.1

14. The Cemetery, Apartments, and School include acres of outdoor space where one would reasonably expect to encounter the general public.

15. Defendant McNamara reported hearing a Champlin officer air that the suspect was "climbing over the fence and was running west thru the Cemetery on foot." In other words, the suspect was reportedly in the Cemetery and running towards the Apartments and School.

16. McNamara knew other officers were in the area.

17. McNamara received prior information that officers unsuccessfully attempted several PIT maneuvers to disable the suspect's vehicle.

18. When McNamara arrived "on scene" he reported observing a squad car [no occupant reported] with its lights activated and the suspect's damaged vehicle.

19. McNamara then reported seeing the suspect running from "the scene."

20. Without warning, McNamara deployed Thor off-leash to track and apprehend the suspect.

21. McNamara's intent was to use Thor as the means to seize the suspect.

22. It was objectively unreasonable under the Fourth Amendment to deploy Thor off-leash and without warning to track and apprehend the suspect.

23. There was ample time and opportunity for McNamara to give the suspect K9 warnings and to warn fellow officers that a K9 was being deployed.

24. Defendant McNamara knew that releasing Thor off-leash to track and apprehend the suspect would result in Thor biting the first person he encountered.

25. This is evidenced by McNamara's own reporting: "I did not give K9 warnings as we got closer to the suspect due to it being very loud with sirens. I tried to air via radio that the K9 was off leash but I could not get on the air due to high volume of air traffic for this incident."

26. McNamara likely contemplated giving warnings *after* he saw a "couple of marked squad [sic] come into the Cemetery" because he knew Thor would attack whichever human being he encountered first.

27. But Defendant McNamara had already: (1) released Thor off-leash without a warning to the suspect or others; (2) lost verbal control of Thor; (3) lost sight control of Thor; and (4) unreasonably done the foregoing during the middle of the day in an area he knew would include other officers and any number of innocent civilians.

28. Irish did not know any peace officer had his/her K9 involved in the apprehension efforts until Thor was on him.

29. No reasonable officer would have known that McNamara had released Thor off-leash to apprehend the suspect because McNamara never relayed that information.

30. Irish reported:

Officer Jaye advised that the suspect now fled on foot into the Cemetery described as a black male where [sic] blue. As I pulled my squad into the Cemetery I observed a Hennepin County Sheriff Deputy running and pointing to the west. I drove my squad to the west and observed the suspect down in a ravine crossing a creek and attempting to get up the ravine. I opened my squad door and attempted to give the suspect commands and all of a sudden the Hennepin County K9 grabbed ahold of my left arm and started to bite. I was attempting to control the K9 and give the suspect commands the best that I could while I was getting bite [sic] in the arm and legs.

31. Irish's body worn camera ("BWC") shows that Thor attacked him the moment Irish opened his Champlin squad car door to pursue the suspect on foot:



93054113.1

32. Portions of McNamara's BWC were provided to Irish prior to filing this lawsuit. That recording begins (as seen below) mid-bite and shows McNamara far away from Thor and Irish. McNamara was already running to close the distance between them and futilely yelling at Thor as he attacked Irish.



33. Later footage from McNamara's BWC shows part of the attack and Thor not obeying McNamara's commands to release or "OUT!" Irish.

93054113.1



34. When Thor seized Irish, the suspect was out of the Cemetery and had crossed the ravine seen at the top left of the above screenshot. The suspect was making his way toward the Apartments.

35. Defendant McNamara reported:

Officer Irish got out of his vehicle as the K9 was approaching the area of the suspect. K9 acquired onto Officer Irish [sic] arm and he pushed him away and Thor continued to try acquiring onto Officer Irish. I grabbed Thor and redirected him towards the suspect on the other side of the ravine that he was trying to climb up the hill. The suspect was told several times to stop moving or the K9 will be sent. The suspect continued to get up the ravine. K9 was sent and apprehended the suspect by the leg.

93054113.1

36. McNamara intended for Thor to seize the first person he encountered, Thor did seize the first person he encountered, and Irish was that person.

37. After McNamara got Thor off Irish, the suspect was given a K9 warning while McNamara held Thor. Irish's bloody arm can be seen below between the time he was attacked and the time Thor apprehended the suspect.



38. Defendant McNamara used Thor to seize the suspect over thirty seconds after Irish was seized. The suspect was arrested.

39. Irish and the suspect were separately transported by ambulance to North Memorial Hospital.

40. The following photographs of Irish's dominant left arm were taken at North Memorial on March 22, 2022.

9

93054113.1





41. Irish's wounds were cleaned and dressed at the North Memorial Hospital Emergency Department.

42. Of primary concern were the numerous penetrating puncture wounds on his dominant left forearm. The dog bite on his buttocks was not causing pain for him at the ED.

10

93054113.1

43. Irish was given a tetanus shot and prescribed Augmentin, an antibiotic. Antibiotics used to prevent infection later resulted in a C. difficile diagnosis, which presented many setbacks in Irish's recovery.

44. Irish attended an online Allina Health visit on April 3, 2022, reporting pain and difficulty sleeping along with redness and irritation around his dog bite wounds.

45. Irish was diagnosed with cellulitis – a deep infection of the skin – and prescribed another antibiotic called Clindamycin.

46. The next day Irish had another online visit because of insomnia. He was prescribed Trazodone as a result.

47. After continuing abdominal pain and diarrhea, Irish's condition got so bad that he went to the Monticello Hospital Emergency Department on May 17, 2022.

48. At Monticello Hospital, Irish described sharp abdominal pain, cramping, nausea and diarrhea. There was a time when he was having diarrhea every five minutes.

49. A CT of his abdomen was completed and revealed, "extensive colitis, extending all the way from the cecum to the proximal sigmoid colon." The cause was described as "likely infectious or inflammatory."

11

50. The records detail a medical concern that Irish's colitis could be from C. difficile infection because of his recent use of antibiotics.

51. A couple days later Irish's stool sample came back positive for C. difficile. He was prescribed Vancomycin, another antibiotic.

52. Irish's C. difficile diagnosis was a direct and proximate result of the dog bite on March 22, 2022.

53. C. difficile is a disease-causing bacterium that can infect the large bowel and cause damage to the lining of the bowel. A healthy intestinal tract contains millions of bacteria that play an important role in metabolism, digestion, immune system regulation, and protection against pathogen invasion.

54. Taking antibiotics can kill these "good" bacteria, allowing C. difficile to multiply and release toxins that damage cells lining the intestinal wall.



55. Irish completed the course of Vancomycin. He felt better, but still had periodic stomach pain.

93054113.1

56. On June 6, 2022, he was back at the clinic reporting nausea, stomach pain and diarrhea. Irish felt as bad as he did before the C. difficile diagnosis. He was prescribed another course of Vancomycin and that prescription was deemed related to his work injury.

57. About ten days later, after increasing symptomology, Irish was referred to infectious disease specialist Dr. Alberto Ricart.

58. On June 23, 2022, Dr. Ricart prescribed a third and longer course of Vancomycin. He assessed that Irish was having relapses and not fully responding to treatment. As a result, Irish was unable to work with usual frequency in the months that followed the dog attack.

59. Irish returned to Dr. Ricart on July 28, 2022 – now four months after the injury – with continuing abdominal discomfort. He was negative for C. difficile, but Dr. Ricart noted that Irritable Bowel Syndrome ("IBS") after the C. difficile infection was the likely cause.

60. IBS is a gastrointestinal disorder in which the bowel becomes irritated, hypersensitive, and does not digest food properly. It often presents as abdominal pain, discomfort, or a change in stool pattern. Acute C. difficile infection is one of the strongest risk factors for its development.

61. Irish still has IBS and takes probiotics daily to relieve his symptoms. He currently has stools at unpredictable times and his stool is always loose.

93054113.1

62. Irish also suffered mental and emotional harm as a result of this incident. After his acute recovery, Irish completed eight counseling sessions at Sunrise Wellness with Laura Sosalla, MA between September 14, 2022 and January 30, 2023.

**42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS**

63. Irish realleges and incorporates by reference each and every allegation contained in each of the above paragraphs as though fully set forth herein.

64. By the actions described above, Defendant McNamara, under color of state law, violated and deprived Irish of his clearly established civil rights to be free from excessive force and unreasonable seizure under the Fourth Amendment to the United States Constitution via his intentional use and deployment of K9 Thor.

65. McNamara caused Irish's Fourth Amendment rights to be violated by his objectively unreasonable use and deployment of Thor and by his failure to reasonably warn Irish and others before releasing the K9 off-leash to track and apprehend the suspect.

66. McNamara subjected Irish to these deprivations either maliciously or by acting with reckless disregard for whether his rights would be violated.

67. As a direct and proximate result of McNamara's acts and omissions, Irish suffered injuries, was forced to endure great pain and mental suffering, and was damaged in an amount to be determined by a jury.

68. Irish has and will incur medical expenses, wage loss, loss of economic opportunity and lost value of working time as a direct and proximate result of Defendant McNamara's misconduct.

69. Punitive damages are available against McNamara and are claimed as a matter of right under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or differing standard of proof under Minnesota law.

70. Irish is entitled to recover his costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Daniel Irish prays for judgment against Defendant Keith McNamara as follows:

1. That this Court find McNamara liable under 42 U.S.C. § 1983 for violating Irish's Fourth Amendment rights;

2. A money judgment against McNamara for compensatory and punitive damages in an amount to be determined by a jury, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest; and

93054113.1

3. For such other and further relief as this Court deems just and equitable.

Dated: March 14, 2023  **ROBINS KAPLAN LLP**

s/Andrew J. Noel
Robert Bennett, #6713
Andrew J. Noel, #0322118
Kathryn H. Bennett, #0392087
Marc E. Betinsky, #0388414
Greta Wiessner, #0401130
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
Telephone: 612-349-8500
rbennett@robinskaplan.com
anoel@robinskaplan.com
kbennett@robinskaplan.com
mbetinsky@robinskaplan.com
gwiessner@robinskaplan.com
*Attorneys for Plaintiff*

93054113.1