UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daniel Irish,

    Plaintiff,

v.

Keith McNamara, in his individual capacity
as a Hennepin County Sheriff's Deputy,

    Defendant.

MEMORANDUM OPINION
AND ORDER
Civil No. 23-619 ADM/ECW

___

Robert Bennett, Esq., Robins Kaplan LLP, Minneapolis, MN, on behalf of Plaintiff.

Sarah C. McLaren, Esq., and Jamil M. F. Masroujeh, Esq., Hennepin County Attorney's Office, Minneapolis, MN, on behalf of Defendant.

___

## I.  INTRODUCTION

On July 20, 2023, the undersigned United States District Judge heard oral argument on Defendant Keith McNamara's ("McNamara") Motion to Dismiss Amended Complaint [Docket No. 21]. For the reasons set forth below, the Motion is denied.

## II.  BACKGROUND

This action under 42 U.S.C. § 1983 arises from injuries sustained by Plaintiff Daniel Irish ("Irish"), a Champlin police officer, when he was attacked by an off-leash police dog deployed by Defendant McNamara, a Hennepin County Deputy Sheriff. Am. Compl. [Docket No. 18] ¶¶ 1, 2, 5. At the time of the attack, Irish and McNamara were both members of a group of officers attempting to apprehend a fleeing suspect running through a cemetery after a traffic stop. Id. ¶¶ 2, 11, 17, 31, 36, 50, 52. Irish alleges that McNamara failed to issue a reasonable warning when releasing the dog off its leash to track the suspect, and that McNamara's actions violated

Irish's Fourth Amendment right to be free from excessive force and unreasonable seizure. Id. ¶¶ 103, 106.

The incident occurred on the afternoon of March 22, 2022. Id. ¶ 11. The suspect initially fled by vehicle from Champlin, Minnesota, after failing a sobriety test, and was driving up to 90 miles per hour during the chase. Id. ¶¶ 2, 12; McClaren Decl. [Docket No. 25] Ex. 2 (Jaye Squad Video) at 19:43:28-19:46:45. Champlin Officer Andy Jaye ("Officer Jaye") drove the lead pursuit vehicle and radioed information to responding officers. Jaye Squad Video at 19:46:21-43. Officer Jaye's radio transmissions can be heard over the radios of the squad cars driven by McNamara and Irish, who were responding in separate squads. The radio transmissions are captured on McNamara and Irish's body-worn camera ("BWC") videos from the incident. See McClaren Decl. Ex. 1 (McNamara BWC) at 14:46:21-43; McClaren Decl. Ex. 3 (Irish BWC) at 14:46:21-43.

Officer Jaye radioed that the suspect lost control of his car near a cemetery on Highway 169 and was fleeing on foot after jumping a fence and running into the cemetery. McNamara BWC at 14:46:48-55; Jaye Squad Video at 19:46:48-55; Irish BWC at 14:46:48-55. The cemetery is adjacent to an apartment building and a school for young adults with special needs. Am. Compl. ¶¶ 9, 13-14. Officer Jaye could not pursue the suspect on foot into the cemetery because his squad door had been damaged during the vehicle pursuit and he could not open it. Id. ¶ 45.

Approximately 30 seconds after the suspect had jumped the cemetery fence, McNamara arrived in his squad car and parked near the suspect's abandoned car. McNamara BWC at 14:47:31-33. McNamara stepped out of his squad and opened the squad's back door to let out his canine partner, Thor, without a leash. Am. Compl. ¶ 32; McNamara BWC at 14:47:33-37.

2

McNamara and Thor ran to the cemetery fence, where McNamara first lifted Thor over and then climbed over the fence himself.  Am. Compl. ¶ 36; McNamara BWC at 14:47:46-14:48:00 Jaye Squad Video at 19:47:46-19:48:00.

The Hennepin County Sheriff's Office Canine policy requires canine handlers to issue "a clearly audible warning announcing that a canine will be used . . . prior to releasing a canine." Id. ¶ 24.  The purpose of the warning is to achieve suspect compliance and to enable innocent persons to safely exit the area to avoid being bitten by the dog.  Id. ¶ 26.  McNamara did not give an audible warning to the suspect or to the officers arriving on the scene that an unleashed canine was being released.  Id. ¶¶ 27, 48, 58, 62, 63, 68, 75.  Irish alleges that McNamara had the time and opportunity to give a canine warning to the arriving officers because McNamara held his squad radio for approximately 30 seconds before releasing Thor from the back seat.  Am. Compl. ¶¶ 27-29; McNamara BWC at 14:47:02-30.

Just after McNamara lifted Thor over the cemetery fence, Officer Jaye, who was still trapped in his vehicle but could see McNamara and Thor, radioed from his vehicle, "Canine just got over the fence.  Hennepin is pursuing."  Am. Compl. ¶ 45; Jaye Squad Video at 19:47:53-56. These radio transmissions can be heard on Irish's BWC video.  Irish BWC at 14:47:53-56.

Once over the fence, McNamara pointed west down a paved path and began running down the path toward the direction of the apartment building, while repeatedly commanding Thor to "Get him!"  Am. Compl. ¶ 50; McNamara BWC at 14:47:57-14:48:08.  Irish alleges that the suspect was not visible to Thor or McNamara when the commands were given.  Am. Compl. ¶¶ 50, 53.  When McNamara shouted the commands, Thor did not race in the direction of the suspect but instead bounded left off the path before returning to the path and running alongside McNamara.  McNamara BWC at 14:47:57-14:48:05.

3

Seconds later, two squad cars with lights and sirens activated approached from the north, several yards ahead of McNamara and Thor.  Id. at 14:48:08.  McNamara continued running and pointed west down the path.  Id. at 14:48:11-12; Am. Compl. ¶ 59.  Irish was driving the lead squad car, and saw McNamara running and pointing west.  Am. Compl. ¶¶ 59, 65.  McNamara claims he was pointing in the suspect's direction and was also pointing down at Thor to give Irish a nonverbal warning that the canine had been released.  Am. Compl. ¶ 60.  Irish disputes this claim.  The BWC footage, when viewed in the light most favorable to Irish, is ambiguous as to whether McNamara pointed down at the dog.  See McNamara BWC at 14:48:11-12.  McNamara did not call out any audible warnings that the canine was unleashed.  Am. Compl. ¶ 58.

Irish turned right (west) onto the path after seeing McNamara point in that direction and hearing someone call over the radio, "Stay off to your right."  Irish BWC 14:48:00-14:48:15; Am. Compl. ¶¶ 55, 65.  As Irish turned onto the path, Thor sprinted away from McNamara toward Irish's squad car.  Am. Compl. ¶¶ 52, 56; McNamara BWC at 14:48:14-18.  Irish drove to the far west side of the cemetery and later spotted the suspect near a ravine that separated the cemetery from the apartment building's parking lot.  Irish BWC video at 14:48:24.  Irish opened his door and began shouting commands at the suspect, who had cleared the ravine and was approaching the parking lot.  Id. at 14:48:24-26; Am. Compl. ¶ 70.

Almost immediately after Irish opened his squad door, Thor attacked Irish by biting him on the arms, legs, and buttocks.  Am. Compl. ¶¶ 52, 66, 69; Irish BWC 14:48:25-14:48:30.  McNamara ran towards them and repeatedly shouted commands to Thor, including four commands to "Come!" and four commands to "Out!"  McNamara BWC at 14:48:26-14:48:50; Am. Compl. ¶ 69.  Thor did not respond to any of the eight commands and continued to attack

4

Irish for about 20 seconds until McNamara reached them and physically removed the dog from Irish's left forearm.  Irish BWC 14:48:25-14:48:50; McNamara BWC 14:48:25-14:48:50; Am. Compl. ¶¶ 52, 69-70, 79-80.  As he was being attacked, Irish told McNamara that he did not know the dog was out.  Irish BWC at 14:48:40-43.

Immediately after Thor had been restrained, Irish shouted commands and a canine warning to the suspect across the ravine.  McNamara BWC at 14:48:49-57; Irish BWC at 14:48:49-57.  McNamara also yelled, "Get on the ground!"  Id.  Despite these warnings and commands, the suspect continued towards the apartment building.  Irish BWC at 14:48:58-14:49:13.  McNamara commanded, "Thor, get him!" and released the dog.  McNamara BWC at 14:49:11-15.  Once released, Thor again moved towards Irish, causing McNamara to grab the dog, turn him around, point in the suspect's direction, and yell, "Get him!"  Id. at 14:49:11-16.  The dog then sprinted across the ravine and bit the suspect on the leg.  Id. 14:49:16-22.  The officers crossed the ravine, removed the dog, and handcuffed the suspect.  Id. at 14:49:23-59.

After the suspect was in custody, Irish told McNamara, "I didn't know that was you running or else I wouldn't have gotten out."  Irish BWC 14:51:26-39; McNamara BWC at 14:51:26-39; Am. Compl. ¶ 68.  McNamara responded that he was "trying to get on the air to say canine was loose, but the air was just tied, tied, tied."  Irish BWC at 14:51:39-47; McNamara BWC at 14:51:39-47; Am. Compl. ¶ 68.  McNamara also wrote in his police report that he did not give a warning in the cemetery because the sirens were very loud, and that he "tried to air via radio that the K9 was off leash but I could not get on the air due to high volume of air traffic for this incident."  Am. Compl. ¶ 75.

Later, while still on the scene, Irish told Hennepin County Sheriff's Office Sergeant Jeremy Gunia, "I was telling [McNamara] I didn't know the . . . dog was out."  McLaren Decl.

5

Ex. 5 (Gunia BWC) at 14:59:47-50; Irish BWC at 14:59:47-50. Gunia responded, "That's the thing . . . all of the sudden I heard 'dog's over the fence' and I'm like, ok, did he throw him over or what happened?" Gunia BWC at 14:59:51-58; Irish BWC at 14:59:51-58.

Irish also asked the officer who had been in the squad car behind him in the cemetery whether he had heard the dog was out. McClaren Decl. Ex. 6 (Martin BWC) at 15:16:11-14. The officer answered that he had heard that, and had looked around for a canine until he saw Thor run in front of his squad. Id. at 15:16:14-24. Irish responded that he "never heard 'dog was out,'" and did not recognize McNamara at the time. Id. at 15:16:32-43.

Irish suffered wounds on his left forearm, legs, and buttocks, and developed a deep skin infection from the wounds. Am. Compl. ¶¶ 79, 81, 85-86. The antibiotics used to treat the infection caused a bowel infection known as C. difficile, which later resulted in irritable bowel syndrome (IBS). Id. ¶¶ 98-99. Irish still suffers from IBS, and also experienced insomnia and emotional distress from the incident. Id. ¶¶ 100-01.

In March 2023, Irish filed this lawsuit under 42 U.S.C. § 1983, alleging that McNamara violated his Fourth Amendment right to be free from excessive force and unreasonable seizure. Id. ¶ 103. McNamara now moves to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6). He argues that the Amended Complaint fails to plausibly allege that Irish was seized under the Fourth Amendment, and that even if he was seized, the use of force was objectively reasonable. McNamara also argues he is entitled to qualified immunity.

### III.  DISCUSSION

#### A. Standard of Review

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

To withstand Rule 12 scrutiny, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Ordinarily, if a district court relies on matters outside the pleadings in considering a motion to dismiss, the motion to dismiss is converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider "materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011). Videos of an incident are properly considered on a motion to dismiss because they are "necessarily embraced by the pleadings." Ching as Tr. for Jordan v. City of Minneapolis, 73 F.4th 617, 621 (8th Cir. 2023). Here, the Court has considered the BWC videos from the incident because they are referenced in and embraced by the Amended Complaint. When analyzing the sufficiency of a complaint, a court is not required to "adopt the plaintiff's version of the facts if they are blatantly contradicted by video evidence." Waters v. Madson, 921 F.3d 725, 734 (8th Cir. 2019) (internal quotations and alterations omitted).

### B. Irish's § 1983 Claim

"Section 1983 imposes liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.'"  Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982)).

Qualified immunity shields government officials from § 1983 lawsuits and liability "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013).  "To overcome qualified immunity at the pleadings stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  Partridge v. City of Benton, 929 F.3d 562, 565 (8th Cir. 2019) (internal quotation marks and alterations omitted).

#### 1. Violation of a Constitutional Right

Irish alleges that McNamara violated his Fourth Amendment right to be free from unreasonable seizure.  "To establish a Fourth Amendment violation, the claimant must demonstrate a seizure occurred and the seizure was unreasonable."  Quraishi v. St. Charles Cnty., 986 F.3d 831, 839 (8th Cir. 2021) (internal quotation marks omitted).

##### a. Seizure

The Court must first determine whether Irish has plausibly alleged that he was seized when the canine bit him.  A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied."  Brower v. Cnty. of Inyo, 489 U.S. 593, 597 (1989) (emphasis in original).  In other words, a person is seized by the

police when that person is "stopped by the very instrumentality set in motion or put in place in order to achieve that result." Id. at 599.

Several courts, including the Eighth Circuit Court of Appeals, have held that when a person is bitten by a police dog that has been deployed to track and bite a suspect, the person has been seized for purposes of the Fourth Amendment, even if the person is an innocent third party rather than the suspect. See Szabla v. City of Brooklyn Park, 429 F.3d 1168, 1173 (8th Cir. 2005) (holding plaintiff had "come forward with facts to make a submissible case of excessive force" where officer failed to give audible warning before deploying canine, and the canine bit plaintiff, who was not the suspect) (reh'g en banc granted in part and vacated in part on other grounds, 486 F.3d 385 (2007)); Collins v. Schmidt, 326 F. Supp. 3d 733, 741 (D. Minn. 2018) (holding that plaintiff, a bystander, was intentionally seized when bit by a canine because the officer conducting the search intended for the canine to seize the first person it encountered and that person was the plaintiff); Hope v. Taylor, No. 8:20-CV-196-T-33AAS, 2020 WL 1677315, at *3 (M.D. Fla. Apr. 6, 2020) ("[N]umerous courts across the country have held that innocent bystanders bitten by police dogs while those dogs were searching for a suspect have been 'seized' for purposes of the Fourth Amendment.").

Here, the Amended Complaint alleges that McNamara released Thor off-leash without the dog having a visual on the suspect, and commanded Thor to "Get him!" Am. Compl. ¶¶ 50, 53. McNamara knew that Thor could not distinguish the suspect from another human in the area. Id. ¶ 40. McNamara also knew and intended that the dog would bite the first person it found. Id.

¶¶ 39, 67. The dog did bite the first person it found, and that person was Irish. Id. ¶ 67. These allegations are sufficient to plausibly allege that Irish was seized.[1]

Urging a different result, McNamara argues that this case is analogous to those where an innocent bystander is struck by an errant bullet. In such cases, courts have held that no seizure occurred because the bystander was not the intended target of the shooting. See Moore v. Indehar, 514 F.3d 756, 760 (8th Cir. 2008) (stating that bystanders struck by an errant bullet in a shootout are not seized for Fourth Amendment purposes because they are not the intended object of the seizure); Rucker v. Harford Cnty., Md., 946 F.2d 278, 281 (4th Cir. 1991) (holding decedent was not seized under the Fourth Amendment where decedent was not the intended target of the shooting by which he was injured); Medeiros v. O'Connell, 150 F.3d 164, 169 (2d Cir. 1998) (holding no Fourth Amendment seizure where hostage was hit by a bullet intended for the hostage-taker).

This logic was applied to a case in this district where a police dog was chasing a suspect onto a bystander's porch, and the dog mistakenly bit the bystander when the bystander grabbed the suspect and held him in a bear hug to prevent him from running into her house. See Hansen v. City of St. Paul, No. 06-1286 DSD, 2007 WL 4224052, at *1 (D. Minn. Nov. 27, 2007). Relying on cases that involved bystanders struck by errant bullets, the court held that no seizure occurred because the canine officer did not intend to seize the plaintiff. Id. at *3-4 (citing Medeiros, 150 F.3d at 167-68; Rucker, 946 F.2d at 281).

---

[1] That Irish was a fellow officer, rather than a bystander, does not alter this conclusion. McNamara intended the canine to seize the first person found, and that person happened to be a fellow officer. A police officer does "not forfeit all constitutional rights when he bec[omes] a member of the police force," and instead retains "the Fourth Amendment right to be free from unreasonable seizure by fellow officers while performing police work." Jensen v. City of Oxnard, 145 F.3d 1078, 1084 (9th Cir. 1998).

Unlike in Hansen, the Amended Complaint alleges that the canine did not have a visual of the suspect and was not actively tracking him. Am. Compl. ¶¶ 50, 53.[2] Taking these allegations as true, this is not a case where force was aimed at a visible object and the force missed the intended target. Rather, the force here---the canine---was aimed at whomever the dog encountered first, and that person was Irish. As such, Irish has plausibly alleged that he was "stopped by the very instrumentality set in motion or put in place in order to achieve that result." Brower, 489 U.S. at 599).

### b. Reasonableness of Seizure

Having determined a Fourth Amendment seizure did occur, the Court next examines whether the seizure was reasonable. Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. (citations omitted).

Determining whether the force used was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

---

[2] The allegations are not clearly contradicted by the BWC videos. Indeed, McNamara admits that the suspect cannot be seen in McNamara's BWC footage at the time McNamara entered the cemetery with Thor and commanded Thor to "Get him!" See Def.'s Reply [Docket No. 30] at 11 n.8. The video shows that when McNamara shouted the command, Thor did not race in the direction of the suspect, but instead bounded left off the path before returning to the path and running alongside McNamara. McNamara BWC at 14:47:57-14:48:05. McNamara nevertheless argues that they would have been able to see the suspect from their position in the cemetery because Officer Jaye could see the suspect from his squad car on Highway 169. This argument fails because McNamara is not entitled to the benefit of this inference at the motion to dismiss stage.

countervailing governmental interests at stake." Id. at 396 (quotations omitted).  Governmental interests include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (citing Graham, 490 U.S. at 396).

Here, governmental interests were at stake because McNamara was pursuing an actively fleeing suspect who had committed serious crimes, including fleeing police and leading them on a high-speed vehicle chase.  However, the interests of officer and public safety were not served by releasing an off-leash police dog into a public cemetery in the middle of the day, without warning, and while knowing that fellow officers would be arriving at the cemetery.

Turning to Irish's Fourth Amendment interests, "factors to be considered in determining whether use of a police dog was reasonable include whether a warning was given, the officer's degree of control over the dog, and whether the bite was terminated in a reasonable amount of time." Collins, 326 F. Supp. 3d at 741.  The facts alleged, when analyzed in the light most favorable to Irish, permit a reasonable inference that McNamara's use of force was objectively unreasonable.

With respect to the first factor, the Eighth Circuit has stated that "the presence or absence of a warning is a critical fact in virtually every excessive force case involving a police dog." Kuha v. City of Minnetonka, 365 F.3d 590, 599 (8th Cir. 2003), abrogated on other grounds by Szabla, 486 F.3d 385.  The purpose of an audible warning is to "enable innocent persons to exit the area and afford suspects an opportunity to surrender." Id. (quoting Vathekan v. Prince George's County, 154 F.3d 173, 176 (4th Cir. 1998)).  In Kuha, the Eighth Circuit held that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and

12

hold method without first giving the suspect a warning and opportunity for peaceful surrender." Id. at 598. Here, Irish has plausibly alleged that it was objectively unreasonable for McNamara to deploy the canine off-leash to find and bite the suspect without giving an audible warning that would have allowed innocent persons, including fellow officers, to get out of harm's way.

Resisting this conclusion, McNamara argues that an audible warning was given by Officer Jaye when he radioed, "Canine just got over the fence," which can be heard over Irish's squad radio. Irish BWC at 14:47:53-56. This argument is rejected because Irish plausibly alleges that this audible warning was not sufficient to give him or any reasonable officer an understanding that a canine was deployed off-leash in a public area to find and bite a suspect. Am. Compl. ¶¶ 46, 49, 64. The BWC videos do not contradict Irish's allegations, and instead show that Irish, as he was being attacked, shouted that he did not know the dog was out. Irish BWC at 14:48:40-43. Irish also told McNamara that he would have remained in his squad car had he recognized McNamara (a canine handler running without a leashed canine) as the person he saw running and pointing in the cemetery. Id. at 14:51:26-39; 14:51:49-57. The BWC videos also show that Sergeant Gunia thought Officer Jaye's warning was confusing and caused him to wonder, "OK, did he throw him over or what happened?" Gunia BWC at 14:59:51-58; Irish BWC at 14:59:51-58. McNamara's statements in his police report---that he did not give a warning in the cemetery because the sirens were loud and that he tried to air via radio that the canine was off leash but could not do so due to high volume of air traffic---also give rise to a reasonable inference that McNamara did not view Officer Jaye's radioed statement as being sufficient to warn Irish that an off-leash canine was running loose in the cemetery.

Regarding the factor of degree of control over the dog, the Amended Complaint alleges that McNamara released the canine off-leash in a public cemetery in the middle of the day to

13

pursue an unseen target, while knowing that fellow officers were arriving at the cemetery. Additionally, the dog ignored at least eight commands by McNamara to halt the attack, and only stopped biting Irish after McNamara physically removed the dog from Irish's arm. These allegations permit a reasonable inference that deploying the canine off-leash with little ability to exercise control over the dog was objectively unreasonable. See Collins, 326 F. Supp. 3d at 742 (holding officer's use of 20-foot leash was objectively unreasonable because it allowed canine to advance out of officer's sight, and that a "20-foot lead might be reasonable in an open field, but not in a crowded urban area").

The final listed factor is termination of the bite. The Amended Complaint plausibly alleges that the bite was not terminated in a reasonable amount of time, because the canine did not respond to McNamara's "out" commands and continued to bite Irish until McNamara could catch up to the dog and physically restrain him. See id. at 743 (finding canine bite was "prolonged" where canine did not respond to officer's "out" command).

Accepting Irish's allegations as true and construing all reasonable inferences in his favor, Irish has plausibly alleged that the force used by McNamara was objectively unreasonable.

**2. Clearly Established Right**

To overcome qualified immunity, Irish must also establish that the right in question was clearly established. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quotation marks omitted). Stated differently, "existing law must have placed the constitutionality of the officer's conduct beyond debate." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quotation marks omitted).

14

To show that a right was clearly established, a plaintiff can: (1) "point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer's actions such that the officer had notice that his specific use of force was unlawful;" (2) "present a robust consensus of cases of persuasive authority doing the same;" or (3) "demonstrate that a general constitutional rule applied with obvious clarity to the facts at issue." Boudoin v. Harsson, 962 F.3d 1034, 1040 (8th Cir. 2020) (internal quotation marks, alterations, and citations omitted).

At the time of the incident in March 2022, existing Eighth Circuit precedent had clearly established that an adequate audible warning must be given before deploying a canine to bite and hold, except in rare cases where an audible warning would jeopardize officer safety. See Adams v. City of Cedar Rapids, 74 F.4th 935, 940 (8th Cir. 2023) (holding officer who failed to give audible warning before deploying canine in August 2020 was not entitled to qualified immunity because the officer "had fair notice from this court's precedent that the failure to give a warning and an opportunity to surrender violated clearly established law"); Kuha, 365 F.3d at 598 ("[A] jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender."); Szabla, 486 F.3d at 392 ("[W]e accept Kuha's Fourth Amendment holding for purposes of analysis, and assume there is a submissible case that Officer Baker was required to give a warning before using his police dog to bite and hold."). Given this clear precedent, a reasonable officer in McNamara's shoes would have understood that deploying the canine off leash to find and bite the suspect without giving an audible warning violated clearly established law.

McNamara argues that Eighth Circuit precedent does not squarely govern this case because the Eighth Circuit cases do not analyze whether a police canine bite of an unintended person constitutes a seizure. The Court disagrees. The facts in Szabla are sufficiently similar to

15

put McNamara on notice that a seizure occurs when a canine is deployed to find and apprehend a suspect and the canine finds and bites an innocent party. In Szabla, a police officer failed to give an audible warning before deploying a canine in a public park to locate and apprehend a suspect. Szabla, 429 F.3d at 1171-73. The canine found and bit Szabla, who was not the suspect but instead an innocent person who had been sleeping in the park. Id. The Eighth Circuit held that Szabla had "come forward with facts to make a submissible case of excessive force." Id. at 1173. Implicit in this holding was that Szabla was seized, since there is no excessive force absent a seizure. Similarly here, McNamara deployed a canine to find and bite a suspect, and the canine found and bit Irish, who was not a suspect but instead an innocent fellow officer. The canine bite was a seizure under clearly established law.

McNamara also argues that the facts here are not sufficiently similar to Kuha and Szabla because the plaintiffs seized in those cases did not receive a prior warning, whereas Irish was given an audible warning from Officer Jaye over the police radio, as well as a visual warning by McNamara when he supposedly pointed at the canine. This argument lacks merit because, as discussed above, Irish has plausibly alleged that no reasonable officer would have understood these warnings as being sufficient to warn Irish that a canine was deployed off-leash in a public area to find and bite a suspect. Accepting Irish's allegations as true and construing all reasonable inferences in his favor, a reasonable officer would have understood that the failure to give an effective audible warning violated clearly established law.

This conclusion is consistent with the Eighth Circuit's recent decision in Adams, which held that a canine handler who failed to give an audible warning when deploying a police dog in August 2020 was not entitled to qualified immunity, even though warnings were announced over PA systems by fellow officers in the area. 74 F.4th at 936-40. The dog found and bit a juvenile,

A.H., who was hiding underneath a trailer and who later testified that he did not hear the other officers' warnings. Id. at 938-39. The Eighth Circuit found that the facts, viewed most favorably to A.H., showed that A.H. "did not hear the other officers' warnings and did not have the opportunity to surrender." Id. at 940. Qualified immunity was denied because the canine handler "had fair notice . . . that the failure to give a warning and an opportunity to surrender violated clearly established law." Id.

Because the Amended Complaint plausibly alleges that McNamara violated a constitutional right that was clearly established at the time of the challenged conduct, he is not entitled to qualified immunity.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Keith McNamara's Motion to Dismiss Amended Complaint [Docket No. 21] is **DENIED.**

BY THE COURT:

Dated: August 31, 2023

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT